**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNDER SEAL,<br>Plaintiff[s],<br><br>v.<br><br>UNDER SEAL,<br>Defendant[s]. | Civil Action No. ____________<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

**FALSE CLAIMS ACT COMPLAINT**

**DO NOT ENTER ON PACER OR**
**OTHERWISE PLACE ON THE PUBLIC DOCKET**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BLACK ARROW STRATEGIES LLC,<br><br>Plaintiff/Relator,<br><br>v.<br><br>TRAVELZOO,<br><br>Defendant. | Civil Action No. ____________<br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 |

**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT AND DEMAND FOR JURY TRIAL**

Black Arrow Strategies LLC, as relator on behalf of the United States of America, brings this action against Travelzoo under the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 et seq., and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a qui tam case, filed on behalf of the United States of America, seeking to recover approximately $9,569,540.55 in treble damages, plus civil penalties, from Travelzoo ("Defendant") for fraudulently obtaining Paycheck Protection Program ("PPP") funds by falsely certifying that the loan was necessary to support its ongoing operations when it was not.

2. At all relevant times alleged below, Defendant was an issuer, the securities of which were listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f.

3. Publicly traded issuers with substantial market value and access to capital markets were unlikely to be able to make the required good-faith necessity certification for First-Draw PPP loans.

4. Defendant nevertheless certified that "[c]urrent economic uncertainty" made its PPP loan request necessary to support its ongoing operations, even though the SBA and Treasury guidance made clear that a public company with substantial market value and access to capital markets was unlikely to be able to make that certification in good faith. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

5. Despite that inability to make the required necessity certification in good faith in this case, Defendant applied for and received First-Draw PPP Loan No. 5809977109 in the amount of $3,121,605 on or about April 14, 2020 through HSBC Bank USA, National Association. Defendant later sought and obtained forgiveness of $3,158,630.80 on or about July 2, 2021, and the federal government also paid the lender processing fee associated with the loan. See ProPublica, Tracking PPP: Travelzoo, https://projects.propublica.org/coronavirus/bailouts/loans/travelzoo-5809977109.

6. Had Defendant not falsely certified eligibility and falsely certified that the loan was necessary, and had Defendant not repeated representations of eligibility and compliance in its forgiveness submission, it would not have received the loan or the forgiveness. The United States suffered actual damages of approximately $3,189,846.85 and treble damages of approximately $9,569,540.55.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action seeks to redress violations of the False Claims Act, 31 U.S.C. § 3729 et seq., and therefore arises under the laws of the United States. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1345 because this action is brought in the name of the United States, and the real party in interest to the claims in this action is the United States.

8. This Court has personal jurisdiction over Defendant because Travelzoo is a Delaware corporation with its principal place of business in this District. *See, e.g., United States ex rel. Miller v. Reckitt Benckiser Grp.*, 698 F. Supp. 3d 889, 905 (W.D. Va. 2023) (explaining that because the False Claims Act "contains a broad jurisdictional provision that permits nationwide service," personal jurisdiction hinges on minimum contacts with the United States as a whole); 31 U.S.C. § 3732(a).

9. Venue is proper in this District because Defendant can be found, resides, and transacts business within this District. 31 U.S.C. § 3732(a). Alternatively, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within this District. 28 U.S.C. § 1391(b)(2).

## III. PARTIES

10. The "real party in interest" to the claims in this action is the United States of America. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009).

11. Relator Black Arrow Strategies LLC is a company specializing in the investigation of misconduct and fraud relating to government contracts and programs.

12. Defendant Travelzoo is a Delaware corporation with its principal place of business in New York, New York.

## IV. DISCLOSURES

13. As required by 31 U.S.C. § 3730(b)(2), after filing this Original Complaint, Relator will serve an Original Disclosure Statement and a copy of this Original Complaint to the Attorney General of the United States and to the United States Attorney for the Southern District of New York, together with all material evidence and information in Relator's possession.

## V. THE FALSE CLAIMS ACT

14. The False Claims Act is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, 1986 U.S.C.C.A.N. 5266, 5266.

15. Any individual or entity may bring violations of the False Claims Act to the government's attention by filing suit as a relator on behalf of the United States. 31 U.S.C. § 3730(b)(1). This includes companies that specialize in investigating and reporting fraud, which have been recognized by the Department of Justice as valuable partners in its fight against the misuse of public funds. *See, e.g.*, Press Release, U.S. Dep't of Justice, U.S. Att'y Off., D. Ariz., Country Club to Pay Over $630,000 to Resolve False Claims Act Allegations Relating to Improper Receipt of Paycheck Protection Program Loan (Nov. 13, 2024), https://perma.cc/UGX9-V2WF; Press Release, U.S. Dep't of Justice, U.S. Att'y Off., S.D. Cal., Nonprofit Organizations Pay Over $5.8 Million to Resolve Allegations of Fraudulently Obtaining Pandemic-Related Loans (June 12, 2024), https://perma.cc/L6V2-YCBR.

16. An entity or person violates the FCA when that entity or person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

17. Under the FCA, a claim includes "any request or demand … for money" that is "presented to an officer, employee, or agent of the United States." *Id.* § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment and the "misrepresentation about compliance" was "material to the Government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

18. In 2009, Congress amended the FCA to also make an entity or person liable if that entity or person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Fraud Enforcement & Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, 1621 (2009) (codified at 31 U.S.C. § 3729(a)(1)(B)).

19. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant either "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). When words indicating knowledge - like "know," "knowledge," "knowingly," or words of similar import - are used in this complaint, they mean "knowingly" as defined in the FCA.

20. No "proof of specific intent to defraud" the Government is required to show that a defendant acted knowingly under the FCA. *Id.* § 3729(b)(1)(B).

21. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

22. The FCA imposes treble damages plus a civil penalty for each violation of the statute. *Id.* § 3729(a)(1); 28 C.F.R. § 85.5(a), tbl. 1 (inflation-adjusted penalty amounts).

23. As of the date this complaint is filed, courts must assess a civil penalty in the inflation-adjusted range then applicable under 31 U.S.C. § 3729(a)(1), 28 C.F.R. § 85.5(a), tbl. 1, and the Civil Monetary Penalty Adjustments for Inflation notice in effect at the time of judgment.

24. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## VI. WITH NARROW EXCEPTION, PUBLICLY TRADED ISSUERS WERE INELIGIBLE FOR FIRST-DRAW PPP LOANS

25. The PPP was established by the CARES Act to provide forgivable loans to eligible businesses and organizations affected by the COVID-19 pandemic. 15 U.S.C. § 636(a)(36).

26. To obtain a First-Draw PPP loan in 2020, the borrower, through an authorized representative, had to certify that the "[a]pplicant is eligible to receive a loan under the rules in effect at the time this application is submitted" and had to certify in good faith that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." *See* PPP Borrower Application Form, SBA Form 2483 (April, 2020), at 2, https://perma.cc/N8QV-X93W.

27. On April 23, 2020, the SBA and Treasury issued FAQ 31, which explained that borrowers had to make the necessity certification in good faith, taking into account current business activity and the ability to access other sources of liquidity sufficient to support ongoing operations in a manner not significantly detrimental to the business. The SBA and Treasury further explained that it was "unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith" and that such a company should be prepared to demonstrate the basis for its certification to the SBA upon request. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

28. Upon the SBA's guidance that public companies likely did not qualify for PPP loans, many companies began returning their loans. *See* Kenny Herzog, *Which Public Companies Have Returned Their SBA PPP Loans? (Updated)*, Entrepreneur (last updated May 26, 2020), https://www.entrepreneur.com/growing-a-business/which-public-companies-have-returned-their-sba-ppp-loans/349848. Travelzoo did not.

29. The SBA granted a good faith safe harbor to borrowers who applied for a PPP loan prior to the issuance of the April 23, 2020, guidance *and* who repaid the loan in full by May 18, 2020. *See* SBA/Treasury PPP FAQ 31, at 15. Any borrowers who did not return their First-Draw PPP loan by May 18, 2020, are thus not extended the safe harbor.

30. For First-Draw loans made before December 27, 2020, publicly traded status alone is not the categorical statutory bar. The false statement is the borrower's eligibility and necessity certification where the borrower's public-company status, market value, liquidity, and access to capital markets show that the borrower could not likely make the necessity certification in good faith.

31. Thus, for First-Draw loans made before December 27, 2020, a public company with substantial market value and access to capital markets could not likely make the good-faith necessity certification absent facts demonstrating that the loan was necessary notwithstanding those sources of liquidity.

## VII. FACTUAL ALLEGATIONS

### A. Travelzoo was publicly traded with substantial market value and access to capital markets.

32. To obtain its First-Draw PPP loan, Travelzoo was required to certify in good faith that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." *See* PPP Borrower Application Form, SBA Form 2483 (April, 2020), at 2, https://perma.cc/N8QV-X93W.

33. That certification was false when made, or at minimum false when Defendant retained the funds and later sought forgiveness, because Defendant's public-company status, market capitalization, cash reserves, access to capital markets, and contemporaneous financial disclosures showed that PPP funds were not necessary to support its ongoing operations. For many

borrowers PPP was an essential lifeline, but for Defendant, it was one among many options to capitalize its business.

34. At the time of the PPP application, Travelzoo was an issuer whose securities traded publicly on the NASDAQ Global Select Market under ticker symbol TZOO. Defendant's SEC filings identified its CIK as 0001133311 and identified its securities as listed on the NASDAQ Global Select Market. *See* Travelzoo, Annual Report (Form 10-K), at cover page (Mar. 31, 2021), https://www.sec.gov/Archives/edgar/data/1133311/000162828021006272/tzoo-20201231.htm. That public listing gave Defendant access to public equity markets unavailable to ordinary small businesses for which the PPP was designed.

35. On or about April 14, 2020, Travelzoo had a market capitalization of approximately $34 million to $57 million, calculated by multiplying approximately 11,439,000 shares outstanding by a closing share price of approximately $3.00 to $5.00. *See* Travelzoo, Quarterly Report (Form 10-Q), Subsequent Events Note (for the quarter ended March 31, 2020) (disclosing stock option repricing at $3.49 on May 29, 2020), https://www.sec.gov/Archives/edgar/data/1133311/000113331120000037/R19.htm; Travelzoo, Quarterly Report (Form 10-Q), at cover page (shares outstanding), https://www.einpresswire.com/article/520285143/travelzoo-reports-first-quarter-2020-results. Defendant's First-Draw PPP loan of $3,121,605 represented approximately 5.5% to 9.2% of Defendant's market capitalization.

36. As of March 31, 2020, the closest reported period before the PPP application, Defendant reported approximately $12,130,000 in cash and cash equivalents. *See* Travelzoo, Press Release, Travelzoo Reports First Quarter 2020 Results (June 25, 2020), https://www.einpresswire.com/article/520285143/travelzoo-reports-first-quarter-2020-results.

Defendant's cash alone was approximately 3.9 times the amount of its PPP loan. Including restricted cash and cash from discontinued operations, Defendant held approximately $14.4 million in total cash, cash equivalents, and restricted cash as of March 31, 2020. *Id.*

37. During the first quarter of 2020, Defendant repurchased approximately $1,205,000 of its own stock. *See* Travelzoo, Annual Report (Form 10-K), at Cash Flow Statement (Mar. 31, 2021), https://www.sec.gov/Archives/edgar/data/1133311/000162828021006272/tzoo-20201231.htm. Repurchasing stock while retaining taxpayer-backed PPP funds supports the inference that Defendant had liquidity and did not need the PPP loan.

38. The SBA granted a good-faith safe harbor to borrowers who repaid their PPP loans by May 18, 2020. Travelzoo did not repay. Instead, Defendant retained the loan through July 2, 2021, when the SBA approved forgiveness of $3,158,630.80. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ; Travelzoo, Press Release, Travelzoo Reports Third Quarter 2021 Results (Oct. 29, 2021), https://www.globenewswire.com/news-release/2021/10/29/2323574/0/en/Travelzoo-Reports-Third-Quarter-2021-Results.html.

39. Defendant's cash position recovered dramatically after receiving the PPP loan. From $14.4 million at March 31, 2020, Defendant's total cash, cash equivalents, and restricted cash grew to approximately $27.0 million by June 30, 2020, to approximately $52.0 million by September 30, 2020, and to approximately $64.4 million by December 31, 2020—a nearly 4.5-fold increase in nine months. *See* Travelzoo, Press Release, Travelzoo Reports Second Quarter 2020 Results (July 22, 2020), https://www.einpresswire.com/article/522879800/travelzoo-reports-second-quarter-2020-results; Travelzoo, Annual Report (Form 10-K) (Mar. 31, 2021), https://www.sec.gov/Archives/edgar/data/1133311/000162828021006272/tzoo-20201231.htm.

Throughout this period, Defendant continued to carry and ultimately sought forgiveness of the $3.1 million PPP loan.

40. By July 2020, Travelzoo itself stated that "the company does not anticipate requiring any further loans." Travelzoo, Press Release, Travelzoo Reports Second Quarter 2020 Results (July 22, 2020), https://www.einpresswire.com/article/522879800/travelzoo-reports-second-quarter-2020-results. That statement, made approximately three months after receiving PPP funds, confirms that any liquidity need was transient. Defendant nevertheless retained the PPP loan and later sought full forgiveness.

**B. Travelzoo applied for, received, and later sought forgiveness of a First-Draw PPP loan despite its false necessity certification.**

41. Despite that inability to make the required necessity certification in good faith, Defendant applied for and received First-Draw PPP Loan No. 5809977109 in the amount of $3,121,605 on or about April 14, 2020 through HSBC Bank USA, National Association. The loan was later forgiven in the amount of $3,158,630.80 on or about July 2, 2021. *See* ProPublica, Tracking PPP: Travelzoo, https://projects.propublica.org/coronavirus/bailouts/loans/travelzoo-5809977109. The federal government also paid approximately $31,216.05 to the lender as a processing fee for the loan. *See* SBA Procedural Notice 5000-20028, Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process (2020), https://perma.cc/T3VU-RGSB.

42. To obtain PPP Loan No. 5809977109, Defendant, through an authorized representative, was required to submit SBA Form 2483, or a lender-equivalent First-Draw borrower application. That application required the signer to certify that "[a]pplicant is eligible to receive a loan under the rules in effect at the time this application is submitted ...." The application also required the signer to certify in good faith that "[c]urrent economic uncertainty makes this

loan request necessary to support the ongoing operations of the Applicant." *See* PPP Borrower Application Form, SBA Form 2483 (April, 2020), at 2, https://perma.cc/N8QV-X93W. Because Travelzoo was a public company with substantial market value and access to capital markets, and because the facts pleaded show that Travelzoo could not likely make the necessity certification in good faith, Defendant's eligibility and necessity certifications were false when made.

43. To obtain forgiveness of PPP Loan No. 5809977109, Defendant, through an authorized representative, was required to submit SBA Form 3508 or a lender-equivalent forgiveness application. That submission required the signer to certify the truth and correctness of the request and acknowledged that SBA could deny forgiveness if the borrower was ineligible for the PPP loan. *See* PPP Loan Forgiveness Application Form, SBA Form 3508, at 2-3, https://perma.cc/K9KJ-7STJ.

44. The repeated eligibility, necessity, and forgiveness certifications support Defendant's knowledge, or reckless disregard, of its fraudulent activity. Defendant's own SEC filings, investor disclosures, and exchange listings reflected its public-company status, market value, and access to capital markets. *See* Travelzoo, Annual Report (Form 10-K) (Mar. 31, 2021), https://www.sec.gov/Archives/edgar/data/1133311/000162828021006272/tzoo-20201231.htm; Travelzoo, Press Release, Travelzoo Reports Second Quarter 2020 Results (July 22, 2020), https://www.einpresswire.com/article/522879800/travelzoo-reports-second-quarter-2020-results.

45. At a minimum, Defendant acted with actual knowledge, deliberate ignorance, or reckless disregard when it caused an authorized representative to certify PPP eligibility, certify necessity, and later seek forgiveness on a loan Defendant was never entitled to obtain or retain. *See* 31 U.S.C. § 3729(b)(1)(A).

46. By submitting both the borrower application and the forgiveness submission, Defendant falsely certified that it was eligible for a First-Draw PPP loan and PPP-loan forgiveness even though Defendant could not likely make the required good-faith necessity certification as a publicly traded issuer with access to capital markets.

**COUNT ONE**

**PRESENTING FALSE CLAIMS FOR PAYMENT,**

**31 U.S.C. § 3729(A)(1)(A)**

47. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

48. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States Government for a First-Draw PPP loan, and for forgiveness of that loan, in violation of 31 U.S.C. § 3729(a)(1)(A).

49. Specifically, each of the following application and forgiveness submissions was a "claim" presented to the United States (through the SBA or its agents), and each was false because Defendant could not likely make the required good-faith necessity certification for First-Draw PPP funds yet certified otherwise.

50. For Travelzoo:

a. First-Draw Loan Application: On or about April 14, 2020, Travelzoo submitted a First-Draw PPP loan application and falsely certified that "[c]urrent economic uncertainty" made the loan request necessary to support its ongoing operations, even though Defendant was a public company with substantial market value and access to capital markets and could not likely make that certification in good faith. *See* SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

b. First-Draw Loan Forgiveness: Some time before July 2, 2021, Travelzoo submitted a PPP forgiveness application and again falsely certified its compliance and eligibility. The SBA approved the loan forgiveness, totaling $3,158,630.80.

51. Each PPP loan application described above was a "claim" under the FCA because it was a "request or demand … for money or property … that" was "presented to an officer, employee, or agent of the United States" — namely, to PPP lenders acting on SBA's behalf — or, alternatively, to a "contractor, grantee, or other recipient" to be reimbursed by the United States. 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

52. Each PPP forgiveness application described above was likewise an additional "claim" under the FCA because Defendant further requested or demanded money or property from the United States through SBA, and forgiveness was conditioned on renewed eligibility and compliance certifications. *Id.* § 3729(b)(2)(A).

53. At the time of the false statements and presentments, Defendant knew these statements were false because it had "actual knowledge of" the facts establishing its ineligibility, "acted in deliberate ignorance of the truth or falsity of" those facts, or "acted in reckless disregard of the truth or falsity of" those facts. Id. § 3729(b)(1)(A).

54. The United States - unaware of the material falsity of the claims made or caused to be made by Defendant - approved, paid, and participated in payments made by the United States' agents (PPP lenders) for loans that were not permitted under law and, as applicable, in loan forgiveness that was not permitted under law.

55. Because of these payments, approvals, and/or loan forgiveness, the United States has been damaged in an amount of approximately:

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $3,158,630.80 |

| | |
|---|---|
| First-draw loan processing fee | $31,216.05 |
| **Total actual damages** | **$3,189,846.85** |

56. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. See 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

## COUNT TWO

## MAKING OR USING FALSE RECORDS OR STATEMENTS

### 31 U.S.C. § 3729(a)(1)(B)

57. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

58. Defendant knowingly made, used, or caused to be made or used false records or statements that were material to false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

59. Specifically, each of the following application and forgiveness submissions included false statements about eligibility, public-issuer status, necessity, and entitlement to loan forgiveness, and each was presented to the United States (through the SBA or its agents).

60. For Travelzoo:

a. First-Draw Loan Application: On or about April 14, 2020, Travelzoo submitted a First-Draw PPP loan application and falsely certified that "[c]urrent economic uncertainty" made the loan request necessary to support its ongoing operations, even though Defendant was a public company with substantial market value and access to capital markets and could not likely make that certification in good faith. See SBA/Treasury PPP FAQ 31 (April 23, 2020), https://perma.cc/5YVJ-R8VQ.

b. First-Draw Loan Forgiveness: Some time before July 2, 2021, Travelzoo submitted a PPP forgiveness application and again falsely certified its

compliance and eligibility. The SBA approved the loan forgiveness, totaling $3,158,630.80.

61. At the time of the false statements, Defendant knew that these statements were false because Defendant either had "actual knowledge of" the facts establishing its ineligibility, acted in deliberate ignorance of the truth or falsity of those facts, or acted in reckless disregard of the truth or falsity of those facts. Id. § 3729(b)(1)(A).

62. False statements by Defendant under this Count were material to the false and fraudulent claims for approval, payment, and forgiveness that Defendant made or caused to be made to the United States or its agents.

63. The United States - unaware of the material falsity of the claims made or caused to be made by Defendant - approved, paid, and participated in payments made by the United States' agents (the financial institutions dispensing loans) for loans that were not permitted under law, and later in loan forgiveness that was not permitted under law.

64. But for Defendant having made and used these materially false statements, the United States and its agents would not have approved, paid, or forgiven Defendant's PPP loan.

65. Because of these false and fraudulent statements that Defendant made, used, or caused to be made or used, the United States has been damaged in an amount of approximately:

| | |
|---|---|
| First-draw loan total amount forgiven (including interest) | $3,158,630.80 |
| First-draw loan processing fee | $31,216.05 |
| **Total actual damages** | **$3,189,846.85** |

66. The United States is entitled to treble damages plus a civil monetary penalty for each false claim. See 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5.

**PRAYER FOR RELIEF**

67. WHEREFORE, Relator prays for judgment against Travelzoo for:

a. Three times the amount of damages that the United States has sustained. Relator calculates that the United States has sustained approximately $3,189,846.85 in actual damages. Relator thus anticipates, at this point in time, that the United States' treble damages are approximately: $9,569,540.55.

b. The maximum civil penalties allowed by law under 31 U.S.C. § 3729(a);

c. An award to Relator for the maximum allowed under 31 U.S.C. § 3730(d);

d. An award to Relator for attorneys' fees, costs, and expenses;

e. Interest as provided by law; and

f. Any other relief that this Court deems appropriate.

## JURY DEMAND

Relator demands a trial by jury on all claims and issues so triable.

Dated: August 28, 2026

Respectfully submitted,

Albert Pak (NY Bar No. 5540273)
PAK HEINZ PLLC
2200 Wilson Blvd Suite 602
Arlington, VA 22201
Telephone: (202) 505-6350
albert.pak@pakheinz.com

Attorneys for Relator
Black Arrow Strategies LLC